**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MAHAMADOU SIMAHA and MARLON SMITH, *on behalf of themselves and others similarly situated*,

                         *Plaintiffs*,

       -against-

ARON SECURITY, INC. dba ARROW SECURITY,

                      *Defendants*.

---

**FLSA COLLECTIVE ACTION and RULE 23 CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

---

Plaintiffs MAHAMADOU SIMAHA ("Simaha") and MARLON SMITH ("Smith" and together with Simaha, the "Plaintiffs"), on behalf of themselves and all other similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendant ARON SECURITY, INC. doing business as ARROW SECURITY ("Arrow Security" or "Defendant") and state as follows:

## INTRODUCTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 et. seq. ("FLSA"), that they and others similarly situated are entitled to recover from Defendant overtime pay of time and one-half for hours worked in excess of forty hours per week.

2.    Plaintiffs further allege that, pursuant to the New York Labor Law "NYLL," they and a proposed class of other similarly situated employees are entitled to recover from Defendant: (1) unpaid minimum wage and overtime compensation; (2) unpaid spread of hours premiums; (3) unpaid uniform maintenance pay; (4) liquidated damages and civil penalties pursuant to the NYLL; and (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs.

3.      Defendant operates a security company under the name "Arrow Security," which provides security services to both commercial and residential sites. Such sites include migrant and homeless shelters, construction sites, schools and higher education, houses of worship, and various other commercial and residential settings.

4.      Defendant employs between 5,000 and 10,000 workers across several states, but primarily in New York State.

5.      Plaintiffs, collective plaintiffs, and class members are current and former employees of Defendant, who were victims of Defendant's schemes to underpay employees' hours. Specifically, Defendant: (i) improperly paid non-exempt employees only for their scheduled hours when it improperly rounded employees' hours to deprive employees of their earned compensation (ii) failed to compensate employees for lunch breaks despite mandating employees to continue working through lunch, (iii) failed to compensate breaks lasting 20 minutes or less, (iv) would fail to include the hours for 'pick-up-shifts' with an employees' compensation for the week such shift was worked, but instead compensate those hours at a later date at a straight time rate and (v) improperly deducted earned time as a penalty for late arrival, deducting always more time than the employee was late.

6.      Defendant designs the schedule of its employees' shifts to run "back-to-back." For example, if a site requires 24-hour period, one guard could be scheduled to the site from 11 pm to 7:00 am. The second guard from 7:00 am to 3:00 PM. The final guard from 3:00 PM to 11 pm. Despite Defendant's schedule not envisioning any overlap between employees, Defendant required security guards to ensure a "relief" guard arrived and was fully debriefed before leaving their post. As Defendant only paid for scheduled shifts and/or rounded employees' time, this overlapping period between security personnel was always unpaid. Defendant requires

employees to stay past their shift to wait for the incoming employee to arrive on site, and often required the departing employee to debrief the arriving employee before leaving. Moreover, security guards working at sites catering to customers were required to stay on site, after their scheduled shifts until the last customer exited the building. This additional wait time, like the wait time for a relief guard, went uncompensated.

7.    Defendant requires that security guards remain tethered to their assigned site during their lunch break for the purpose of continuing to perform security service for the company. These workers stay on – or near – their assigned site and must stay in uniform, and maintain a communication device (e.g., radio or cell phone) in the event of an emergency. The restrictions placed on employees' break is designed solely for the benefit of the employer and, in their absence, the company would have to hire other employees to cover for the same services. By not compensating these workers, Defendant receives free labor from Plaintiffs, collective plaintiffs, and class members. That the meal periods inure to the benefit of the employer is particularly evident, as many of Defendant's contracts mandate continuous security, but Defendant only maintains one guard on the premises. At least once a week supervisors will circulate to each of the sites where Defendant offers services to ensure employees are available at their station. Failure to be found at the station can result in reprimand and potential termination.

8.    In addition to not receiving free and clear breaks as required by law, Defendant fails to compensate Plaintiffs, collective plaintiffs, and class members for breaks even when these breaks last 20-minutes or less in violation of 29 C.F.R. § 785.18.

9.    Defendant would fail to include the hours for shifts worked by an employee in addition to their scheduled hours in the same weeks when these shifts were worked and, instead would compensate for these hours at a later date and at a straight time rate.

10. Defendant failed to compensate New York employees for a spread of hours premium for workdays lasting longer than 10 hours.

11. Defendant required work uniforms and did not pay weekly uniform maintenance pay.

12. Defendant deducted time from earned hours as a penalty for arriving late.

13. Defendant's improper pay practices are designed to, and in fact do, result in a windfall of improperly retained unpaid compensation owed to Plaintiffs, collective plaintiffs, and class members.

14. Plaintiffs bring this wage and hour class action on behalf of themselves and all similarly situated employees, who during the applicable state and federal limitations periods up to and including the present (the "Class Period"), were similarly underpaid by Defendant in violation of protections afforded under the FLSA and the NYLL.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because the Defendants maintain a place of business in this district and the majority of the conduct making up the basis of the complaint took place in this district.

## PARTIES

17. Plaintiff Mahamadou Simaha is an adult over 18 years of age, a citizen of New York, and a resident of Bronx County.

18.    Plaintiff Marlon Smith is an adult over 18 years of age, a citizen of New York, and a resident of Bronx County.

19.    Defendant Aron Security, Inc., doing business as Arrow Security, is a domestic business corporation with its principal executive offices and service of process address located at 300 West Main Street, Suite 228, Smithtown, NY, 11787.

20.    Defendant Arrow Security operates all the sites for which it provides security services through the same executive management team, from the same headquarters with the same policies and procedures. Each site is engaged in related activities, share common ownership, and have a common business purpose:

a) Defendant maintains a centralized labor relations and human resources managing employees working at any site for which they provide security services. For instance, for employees working in New York, there is a centralized human resources and career center listed as the "New York City Career Center" located at 247 W. 35th Street. 3rd Floor New York, NY 10001, 1-800-924-0138. *See* https://arrowsecurity.com/arrow-security-locations-new-york-city/.  This location matches the address in the email signature Plaintiff Simaha received from Compliance officer Tameika Watkins on December 5, 2022 after he was hired.

b) Arrow Security maintains the same website, where visitors can obtain information concerning Arrow Security's  news, information and updates Concerning Arrow's corporate affairs. *See* https://arrowsecurity.com/

c) Defendant lists a range of services offered including providing Armed and Unarmed Security, Access/Egress Control, X-ray and Magnometer Screening, Concierge Security, Vehicle Patrol, Fire Guards, Fire and Life Safety Directors, CCTV Monitoring,

Customized Training Solutions, and Integrated Training Solutions. *See* https://arrowsecurity.com/services/

d) Employees are interchangeable among Defendant's sites. Defendant frequently transfer employees to different sites during their employment. In fact, Plaintiff Malron Smith worked at over three (3) locations throughout New York City during his employment.

21.    At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees employed by Defendant, (including security guards, patrol officers, fire safety officers, fire guards, security concierges, vehicle patrol officers) employed by Defendant in New York on or after the date that is three (3) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

23.    At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiffs and other FLSA Collectives for all hours worked, including overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to Defendant's policies of time shaving. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

24.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

25.    Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees of Defendant, (including security guards, patrol officers, fire safety officers, fire guards, security concierges, vehicle patrol officers) employed by Defendant in any State where they do business on or after the date that is six (6) years, or the relevant statutory period of each State as applicable by law, before the filing of the Complaint in this case (the "Class Period").

26.    The Class Period is further expanded to account for all claims made timely by virtue of Governor Cuomo's March 20, 2020 executive order, Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), and all subsequent and similar orders, including but not limited to, Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, 202.67, and 202.72.

27.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

28.    The proposed Class is so numerous that a joinder of all members is impracticable,

and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is presently based are within the sole control of Defendant. There is no doubt that there are more than forty (40) members of the Class. Upon information and belief, Defendant employs between 5,000 and 10,000 workers, the majority of whom are employed in New York State.

30.    Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendant, as alleged herein, of: (i) failing to pay for all hours worked including overtime premiums, due to Defendant's practice of time-shaving; (ii) failing to pay overtime premiums due to Defendant's practice of paying unscheduled overtime hours at a straight rate; (iii) failing to provide spread-of-hours premium; (iv) failing to pay uniform maintenance pay; (v) failing to provide proper wage statements with every payment of wages; and (vi) failing to properly provide wage notices, at date of hiring and annually, per requirements of NYLL. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

29.    Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are

experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

31.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.     Defendant and other employers throughout the state violate NYLLs. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks

33.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.      Whether Defendant employed Plaintiffs and the Class within the meaning of NYLL;

b.      What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not properly pay Plaintiffs and the Class members;

c.      At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiffs and the Class members for their work;

d.      Whether Defendant properly notified Plaintiffs and Class members of hourly rate and overtime rate;

e.      Whether Defendant provided proper wage notices, at date of hiring and annually thereafter, informing Plaintiffs and Class members of their proper rates of compensation and other information required to be provided on wage notice, as required under NYLL;

f.      Whether Defendant provided Plaintiffs and the Class proper wage statements with each payment of wages, as required under NYLL;

g.      Whether Defendant properly compensated Plaintiffs and the Class their spread of

hours premium;

h.      Whether Defendants required a uniform?

i.       How many of each uniform were provided?

j.       How many hours per week did the employee work for purposes of determining

entitlement to the "low", "middle" or "high" rate for uniform maintenance pay as per 12

NYCRR § 142-2.5?

k.      Whether Defendants laundered or offered to launder the required uniforms?

l.      Whether Defendant paid weekly uniform maintenance pay?

m.      Whether Defendant properly compensated Plaintiffs and Class members for all

hours worked, including overtime hours; and

n.      Whether Defendant properly compensated Plaintiffs and Class members for owed

statutory premiums.

## STATEMENT OF FACTS

34.    Plaintiffs allege the below facts according to their best recollection.  Plaintiffs

reserve the right to amend these pleadings upon the receipt of discovery materials, including

payroll and employee records, that Defendant is obligated to retain pursuant to the New York

Code, Rules and Regulations ("NYCRR").

35.    Upon information and belief, the below facts are consistent among Plaintiffs and

the Proposed Class.

**Plaintiff Mahamadou Simaha**

36.    Plaintiff Simaha worked for Defendant as a security guard from on or around

December 6, 2022 to around the end of March 2023.

37.     Defendant paid Simaha $16.36 on an hourly basis, paid weekly.

38.     Defendant assigned Simaha to work at a women's shelter located at 1260 Sedgwick Avenue, Bronx, New York 10452.

39.     In the first month that Simaha worked for Defendant, three of his checks were missing hours.

40.     Despite being scheduled for approximately 40 hours per week and working 40 hours or more each week during that first month, Defendant paid Plaintiff Simaha for as little as 16 hours per week.

41.     Defendant had a policy of requiring Plaintiff Simaha and the other security guards at that site to use an app called eHub, but also to sign in using paper timesheets.

42.     Based on timesheet retainers by Simaha, he and the other guards at that site were paid only according to the hours on those paper timesheets which simply recorded a round number like 8 or 6 as opposed to an accurate time and and time out as reflected in the more accurate eHub records.

43.     Defendant instructed Simaha and his coworkers to only sign in at the start of their scheduled shifts and at the end of their scheduled shifts resulting in employees typically signing in for 8 hours.

44.     However, Simaha was required to arrive several minutes before the start of his scheduled shifts in order to arrive in time to relieve the guard on duty.  There were also multiple occasions when Plaintiff Simaha had to wait past the scheduled end of his shift in order for his relief to arrive.

45.     Records of timesheets retained by Plaintiff Simaha show over 45 lines of time entries that show exclusively whole hour totals.  For example, security guards working the

overnight shift from midnight to 8:00 am, or working day or evening shifts, are repeatedly credited for exactly eight hours, which is a factual impossibility.

46.     Through Defendant's practice of time shaving, Simaha and other security guards were never compensated for any additional time they spent debriefing or updating their supervisors and relieving guards past the scheduled end of their shifts.  Neither were Simaha and other security guards ever compensated for the additional time they spent waiting on days when their relief arrived late or for the minutes before the scheduled start of their shifts when the arrived early.

47.     On multiple occasions, Plaintiff Simaha worked double shifts, taking on additional shifts in addition to his scheduled hours.

48.     During these weeks when he worked hours in excess of 40 hours per week, Defendant failed to pay him at the required overtime rate of time and one-half, including during the first month that he worked for Defendant when his credited hours and pay were repeatedly short.

49.     On these days when Simaha agreed to work double shifts, he worked a spread of hours in excess of ten hours.

50.     Despite Simaha working spreads of hours in excess of ten hours, and earning just $16.36 per hour, an amount insufficient to cover the required spread of hours premium, Defendant failed to pay Plaintiff Simaha the required spread of hours premium.

51.     Defendant also required Plaintiff Simaha to wear a uniform consisting of a shirt bearing Defendant's logo.

52.     Plaintiff Simaha was required to wear the uniform in a clean condition to work every day.

53.     Simaha did, in fact, wear the uniform to work every day.

54.     Defendant did not launder, nor offer to launder, Plaintiff Simaha's uniform.

55.     Defendant also failed to pay Plaintiff Simaha the required uniform maintenance pay.

56.     Plaintiff's hourly compensation fell below the minimum wage rate when accounting for the required spread of hours and uniform maintenance pay.

**Plaintiff Marlon Smith**

57.     Plaintiff, Marlon Smith, was employed by Arrow Security as a security guard from in or around August 2023 until in or around March 2024.

58.     Smith began his employment in or around August 2023, working at a migrant shelter known as "The Watson Hotel" located on West 57th Street in Manhattan, New York.

59.     In addition to working at the Watson Hotel, Smith was frequently assigned to other locations across Queens, Brooklyn, and other areas when performing double shifts.

60.     As a security guard, Plaintiff's primary duties included patrolling and providing security services at various shelter sites. His typical shift lasted 8 hours, but he often worked overtime by taking on double shifts which were always in excess of 10 hours and at times in excess of 16.

61.     Smith was compensated at a regular hourly rate of $16.70.

62.     Throughout his employment, Plaintiff worked substantial amounts of overtime, often logging 56 to 64 hours per week.

63.     Plaintiff's wage statements did not accurately reflect all hours worked because the company had a practice of time shaving.

64.    Time was tracked throughout the employment on paper time sheets.  There was also an electronic timekeeping software that worked at times, and at times did not.  The company had a practice of disregarding actual hours worked and instead paying for scheduled shift times. This meant that often, Smith was required to come early, or stay late due to staffing issues, and this was tracked on timesheets but not reflected on weekly hours totals on paystubs.

65.    For example, Plaintiff Smith was forced to wait between 5 and 15 mins to be relieved from his shifts on a near daily basis, but was never paid for this additional time.  On other days, his relief could be more than an hour late and Smith does not believe he was fully compensated for his time on days when he was forced to wait an hour or more after the scheduled end of his shifts.

66.    For pay periods when Plaintiff noticed that his pay stubs were missing hours, he did his best to raise these discrepancies with the Defendant's account managers, but his concerns were often not addressed.

67.    The company also had a practice of automatically deducting time for meal breaks, even though Smith did not take a break, or did not take an uninterrupted break of at least 30 minutes, and within the required time intervals under the law.

68.    Smith estimates that between 200 and 500 security guards are similarly employed by Arrow Security at various sites, including many he worked at.

69.    Plaintiff regularly worked shifts exceeding 10 hours, qualifying him for spread-of-hours pay under NYLL. However, Arrow Security failed to provide this additional compensation.

70.    Smith was required to wear a uniform while at work, consisting of a shirt with the logo for Arrow security company.

Plaintiffs' and Class Members' Wage Claims:

71.    On a weekly basis, Defendant failed to pay Plaintiff and the Proposed Class an amount sufficient to cover minimum wage and overtime for all hours worked plus spread of hours pay plus uniform maintenance pay.

72.    Defendant had a policy of paying their non-supervisory security guards at or just above minimum wage.  Plaintiff Simaha was paid just $16.36 per hour in December 2022. When accounting for Defendant's practice of time shaving and unpaid hours, Defendant not only failed to pay Simaha in full for all hours worked including the required overtime premium, but also failed to pay him the required spread of hours premium and uniform maintenance pay.

73.    Defendant requires employees to stay past their shift to wait for the incoming employee to arrive on site. For example, Plaintiff Smith was forced to wait for an additional time on multiple occasions when the security guard was late to relieve him from his shifts.  Defendant failed to pay Plaintiff Smith at all for these extra hours that went beyond the scheduled end of his shift.  During the weeks when his scheduled hours met or exceeded 40 hours, these unpaid hours should have been paid at the time and a half rate.

74.    Throughout their employment with Defendant regardless of location worked, Plaintiffs were not compensated for all hours worked due to Defendant's impermissible policies concerning automatic meal break deductions without ensuring that Plaintiffs and other employees to take a free and clear lunch break or the required duration and during the required windows of time.

75.    Further, Defendant violated the FLSA's "bright line time test" pursuant to 29 C.F.R. 758.18 that breaks of 20 minutes or less must be compensated. *See Martin v. Waldbaum,*

*Inc.*, 1992 U.S. Dist. LEXIS 16007, *6 ("the Court finds, as a matter of law, that breaks of less than twenty minutes are compensable") (emphasis added); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 121 (S.D.N.Y. 2011) ("Rest periods of short duration must be counted as hours worked.") (citing 29 C.F.R. § 785.18); *Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420, 432 (3d Cir. 2017) ("[T]he government should not be in the business of determining what employees do on short work breaks, much less attempting to evaluate which short breaks merit or do not merit compensation. . . . [E]mployers and employees are best served by the bright line time test currently provided in Section 785.18.") (citation omitted). Throughout their employment with Defendant and regardless of location worked, Plaintiffs, FLSA Collective Plaintiffs, and Class members would, on a weekly basis, take at least one short rest breaks of under 20 minutes. However, they were never compensated for this time.

76.     Additionally, Defendant had a policy of paying 'pick-up' shifts, a shift worked in addition to an employee's regular schedule, on a later paycheck than the paycheck providing compensation for the week in which that pick-up shift was worked. When Defendant provided the payment for the hours worked during a pick-up shift, the hours would always be compensated at a straight time rate, even when the hours were overtime hours in the week worked. Plaintiffs Simaha and Smith both worked pick-up shifts, which should have been compensated at an overtime rate, but was instead compensated at a straight time rate.  Plaintiffs had to repeatedly follow up for unpaid hours for their  additional pickup shifts, hours that were taken on in addition to their full-time schedule.  Defendant had a policy of paying Plaintiffs and the Proposed class for these missing hours in later pay periods at the regular straight-time rate rather than the overtime rate.

77.     Plaintiffs Simaha often worked multiple double shifts which would last over ten hours. However, despite making just $16.36 per hour, an amount above the applicable minimum rate insufficient to cover spread of hours premium, Defendant never compensated Simaha with spread of hours premium for the days  he worked in excess of ten (10) hours, such as with a double shift.  Defendant had a policy of failing to pay Class Members the required spread of hours pay for spread of hours in excess of ten hours.

78.     Defendant failed to provide Plaintiffs with compliant periodic wage statements because they failed to accurately reflect the employees' hours worked, due to Defendant's policy of time shaving and due to a policy of failing to include overtime hours for pick-up shifts in an employee's hours.

79.     Defendant failed to provide Plaintiffs and Class Members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiffs did not receive wage notices either upon being hired or upon wage changes since the date of hiring in violation of NYLL.

80.     In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiffs' interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices and wage statements function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices

necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

81.     Here, Defendant's failure goes beyond generating a risk of harm to Plaintiffs and Class Members.  Defendant's conduct actually harmed Plaintiffs and Class Members. Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiffs and Class Members were entitled to get paid, deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs and the Class Members' rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendant's failure to provide wage notices allowed Defendant to hide their policy of time shaving and failure to pay overtime, spread of hours premium and uniform maintenance pay.  Defendant's failure to provide complaint wage notices to employees allowed Defendant to hide their responsibility and deprive employees of their required compensation.

82.     Due to Defendant's failure to provide legally mandated notices such as earning statements and wage notices, Defendant was able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices continue to result in delayed payment of all proper wages owed to Plaintiffs and Class Members.

83.     Defendant knowingly and willfully failed to pay Plaintiffs, FLSA Collective Plaintiffs, and the Class regular and overtime wages for all hours worked due to Defendant's time-shaving practices.

84.     At all relevant times, Plaintiffs, FLSA Collective Plaintiffs and Class members regularly worked over forty (40) hours per week, but Defendant failed to pay them the proper overtime premium rate of one-and-half times of their regular hourly rate for each hour exceeding forty (40) hours per workweek in violation of FLSA and State wage laws.

85.     Due to these unlawful acts, Plaintiffs, FLSA Collective Plaintiffs, and Class members suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiffs are entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action.

## STATEMENT OF CLAIMS

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA) - OVERTIME AND MINIMUM WAGE (On behalf of Plaintiffs and the FLSA Collective)

86.     Plaintiffs reallege and re-aver each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

87.     At all relevant times, Defendant was and continues to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

88.     At all relevant times, Defendants employed Plaintiffs and the Proposed FLSA Collective members within the meaning of the FLSA.

89.     At all relevant times, Defendants have had gross revenues in excess of $500,000.

90.     At all relevant times, Defendant had a policy and practice of failing to pay wages for all hours worked.

91.     At all relevant times, Defendant willfully violated Plaintiffs' and FLSA Collective

Plaintiffs' rights by failing to pay them wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week, due to time-shaving.

92.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendant. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due. Defendant knowingly and willfully disregarded the provisions of FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked when Defendant knew or should have known such was due.

93.     At all relevant times, Defendant had a policy and practice of failing to pay the proper overtime premium to FLSA Collective Plaintiffs for their hours worked.

94.     Defendant failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under FLSA.

95.     As a direct and proximate result of Defendant's willful disregard of FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

96.     Due to the intentional, willful and unlawful acts of Defendant, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II: VIOLATION OF THE NYLL, MINIMUM WAGE, OVERTIME WAGE,**

**SPREAD OF HOURS, AND UNIFORM MAINTENANCE PAY**

**(On behalf of Plaintiffs and the Rule 23 Class)**

97.     Plaintiffs reallege and re-aver each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

98.     Defendants employed Plaintiffs and the Rule 23 Proposed Class members within the meaning of NYLL §§ 2 and 651.

99.     At all relevant times, Defendant had a policy and practice of refusing to pay Plaintiffs and the Rule 23 Class for all hours worked, including at the statutory rate of time and one-half the regular rate for overtime hours worked, due to Defendant's policy of time-shaving.

100.     Furthermore, Defendant willfully violated Plaintiffs and the Rule 23 Class's rights by refusing to compensate them for off-the-clock hours during which they were required to work.

101.     Defendant willfully violated Plaintiffs' and the Rule 23 Class's rights by failing to pay spread-of-hours premium to Plaintiffs and Class Members for each workday that exceeded ten (10) hours in length.

102.     Defendant required Plaintiff and the Rule 23 Class to wear a uniform consisting of a shirt emblazoned with Defendants' logo.

103.     Plaintiffs' and the Rule 23 Class's uniforms were issued by Defendant for the expressed benefit of Defendant and it was a condition of their employment to wear them during each shift.

104.     Defendant never paid Plaintiffs any uniform maintenance pay or reimbursement for the cost of maintaining uniforms.

105.    Defendant did not maintain Plaintiffs' or the Rule 23 Class's required uniforms under the meaning of the NYLL.

106.    Defendant did not, and did not offer to, launder the required uniforms free of charge and with reasonable frequency, and did not inform Plaintiffs or the Rule 23 Class in writing of such service.

107.    Plaintiffs and the Rule 23 Class routinely spent time off-the-clock and money to clean and maintain their uniforms consistent with the uniform appearance standards Defendant requires.

108.    Plaintiffs' hourly compensation fell below the applicable minimum wage when accounting for unpaid spread of hours pay and uniform maintenance pay.

109.    Defendant never paid Plaintiffs or the Rule 23 Class any uniform maintenance pay or reimbursement for the cost of maintaining uniforms in accordance with 12 N.Y.C.R.R. § 142-2.5.

110.    Defendant's conduct is in violation of Article 19 of the NYLL and its supporting regulations, including 12 N.Y.C.R.R. Part 142 the Minimum Wage Order.

111.    Due to Defendant's NYLL violations, Plaintiffs and the Rule 23 Class are entitled to recover from Defendant the difference between their actual wages and the amounts they are owed under the NYLL.  The deficiency accounts for regular rates for all straight time hours, overtime compensations for all overtime hours, "spread of hours" premium, prejudgment and post-judgment interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL §§ 663(1), 198.

### COUNT III: VIOLATION OF THE NYLL WAGE NOTICE AND WAGE STATEMENTS

### (On behalf of Plaintiffs and the Rule 23 Class)

112.    Plaintiffs reallege and re-aver each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

113.    Defendant has willfully failed to supply Plaintiffs and the members of the Rule 23 Class with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs and the members of the Rule 23 Class as their primary language, containing Plaintiffs' and the members of the Rule 23 Class' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

114.    Through their knowing or intentional failure to provide Plaintiffs and the members of the Rule 23 Class with the wage notices required by the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

115.    Defendant has willfully failed to supply Plaintiffs and the members of the Rule 23 Class with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates

of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

116.    Through their knowing or intentional failure to provide Plaintiffs and the members of the Rule 23 Class with the accurate wage statements required by the NYLL, Defendant has willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

117.    Due to Defendant's willful violations of NYLL, Article 6, § 195(1), Plaintiffs and the members of the Rule 23 Class are entitled to statutory penalties of fifty dollars each day that Defendant failed to provide Plaintiffs and the members of the Rule 23 Class with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b ).

118.    Due to Defendant's willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the members of the Rule 23 Class are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendant failed to provide Plaintiffs and the members of the Rule 23 Class with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, §198(1-d).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated Collective Action Members and Rule 23 Class members, respectfully request that this Court grant the following relief:

    i.    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at

any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendants as hourly workers in New York State, and of their right to join this lawsuit if they belief they were denied proper wages;

ii.     An award for unpaid overtime and minimum wage compensation due under the FLSA and NYLL;

iii.    An award of liquidated damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to 29 U.S.C. § 216;

iv.     An award of compensatory and liquidated damages as a result of Defendant's failure to pay overtime, minimum wage, spread of hours pay, and uniform maintenance pay compensation pursuant to the NYLL and the New York State Wage Theft Prevention Act;

vi.     An award of civil penalties pursuant to the New York State Wage Theft Prevention Act;

vii.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

viii.   Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

ix.     An injunction requiring Defendant to pay all statutorily required wages pursuant to the FLSA and NYLL;

x.      An award of prejudgment and post-judgment interest;

xiii.   Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to FRCP 38 the Plaintiffs demand trial by jury on all issues.

Dated:    New York, NY                    **LAW OFFICE OF MOHAMMED GANGAT**
          December 6, 2024

_____
Mohammed Gangat, Esq.,
675 Third Avenue, Suite 1810,
New York, NY 10017
718-669-0714
mgangat@gangatpllc.com

*Attorneys for Plaintiffs and the FLSA Proposed*
*Collective and Rule 23 Proposed Class*